Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

RECEIVED
NOV 07 2023
RICHARD W. NAGEL, CLERK OF COURT
COLUMBUS, OHIO

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

Eastern Division

JANE W. PEARSON

*Plaintiff(s)*
*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

-v-

QUANTUM HEALTH

*Defendant(s)*
*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

Case No. 2:23 CV 3746
*(to be filled in by the Clerk's Office)*

Jury Trial: *(check one)* ☑ Yes ☐ No

JUDGE MORRISON
MAGISTRATE JUDGE JOLSON

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

I. **The Parties to This Complaint**

   A. **The Plaintiff(s)**

   Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

   | | |
   |---|---|
   | Name | JANE W. PEARSON |
   | Street Address | 1330 STARBRIGHT CROSSING DR |
   | City and County | COLUMBUS, DELAWARE |
   | State and Zip Code | OH, 43240 |
   | Telephone Number | (614)323-5545 |
   | E-mail Address | janewpearson8@gmail.com |

   B. **The Defendant(s)**

   Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Page 1 of 6

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

Defendant No. 1
- Name: QUANTUM HEALTH
- Job or Title *(if known)*:
- Street Address: 5240 BLAZER PKWY
- City and County: DUBLIN, FRANKLIN
- State and Zip Code: OH, 43017
- Telephone Number: (800) 257-2038
- E-mail Address *(if known)*: legalteam@quantum-health.com

Defendant No. 2
- Name:
- Job or Title *(if known)*:
- Street Address:
- City and County:
- State and Zip Code:
- Telephone Number:
- E-mail Address *(if known)*:

Defendant No. 3
- Name:
- Job or Title *(if known)*:
- Street Address:
- City and County:
- State and Zip Code:
- Telephone Number:
- E-mail Address *(if known)*:

Defendant No. 4
- Name:
- Job or Title *(if known)*:
- Street Address:
- City and County:
- State and Zip Code:
- Telephone Number:
- E-mail Address *(if known)*:

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

### C. Place of Employment

The address at which I sought employment or was employed by the defendant(s) is

| | |
|---|---|
| Name | QUANTUM HEALTH |
| Street Address | 5240 BLAZER PKWT |
| City and County | DUBLIN, FRANKLIN |
| State and Zip Code | OH, 43017 |
| Telephone Number | (800) 257-2038 |

## II. Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

[✓] Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

[ ] Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

[✓] Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

[ ] Other federal law *(specify the federal law)*:

[ ] Relevant state law *(specify, if known)*:

[ ] Relevant city or county law *(specify, if known)*:

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

**III.** **Statement of Claim**

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A. The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

- ☐ Failure to hire me.
- ☑ Termination of my employment.
- ☐ Failure to promote me.
- ☑ Failure to accommodate my disability.
- ☐ Unequal terms and conditions of my employment.
- ☑ Retaliation.
- ☑ Other acts *(specify)*: Hostility

*(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B. It is my best recollection that the alleged discriminatory acts occurred on date(s)
06/01/2023-10/31/2023

C. I believe that defendant(s) *(check one)*:
- ☐ is/are still committing these acts against me.
- ☑ is/are not still committing these acts against me.

D. Defendant(s) discriminated against me based on my *(check all that apply and explain)*:
- ☑ race — Black
- ☐ color
- ☐ gender/sex
- ☐ religion
- ☐ national origin
- ☐ age *(year of birth)* _____ *(only when asserting a claim of age discrimination.)*
- ☑ disability or perceived disability *(specify disability)*
  Congenital Disorder, PMDD, Depression & Anxiety

E. The facts of my case are as follows. Attach additional pages if needed.

See attached "Statement of Claim"

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

**IV.  Exhaustion of Federal Administrative Remedies**

A.  It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

11/02/2023

B.  The Equal Employment Opportunity Commission *(check one)*:

☐ has not issued a Notice of Right to Sue letter.

☑ issued a Notice of Right to Sue letter, which I received on *(date)* 11/02/2023 .

*(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C.  Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☐ 60 days or more have elapsed.

☐ less than 60 days have elapsed.

**V.  Relief**

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

See attached "Demand for Relief"

## VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 11/07/2023

Signature of Plaintiff

Printed Name of Plaintiff     JANE W. PEARSON

### B. For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address

# UNITED STATES DISTRICT COURT

for the

Southern District of Ohio

Eastern Division

| | |
|---|---|
| JANE W. PEARSON | Case No.: |
| Plaintiff, | Judge: |
| v. | |
| QUANTUM HEALTH | |
| Defendant. | |

**MEMORANDUM**

Plaintiff, appearing *pro se*, hereby submits her Statements of Fact, Statement of Claim and Request for Relief in the above referenced matter.

**I.  Statements of Fact and Chronology of Events:**

    a. Plaintiff was hired by Quantum Health on 04/24/2023 as a Patient Service Representative (PSR), also known as a "Warrior".

    b. After training in early June, 2023, Plaintiff notified her newly assigned immediate supervisor, Gina Matthias, of her congenital intestinal condition whose symptoms include severe stomach pain, nausea, vomiting, diarrhea and fatigue. Further, Plaintiff advised her manager that she is usually on FMLA due to intermittent

1 | Page

    absences as a result of her condition. Plaintiff did not advise her manager of her struggles with depression and anxiety to protect her privacy, but she planned to include those conditions in her request for FMLA when she became eligible for it after a year of service.

c. Plaintiff continued to keep her manager abreast of her condition and she would call off work or leave early when her symptoms flared up, after appropriately notifying her manager of the absence via email, text or Teams messenger.

d. At no time did Gina Matthias suggest to Plaintiff that Americans with Disabilities Act of 1990 would be an option for her to seek work accommodation for her disabilities.

e. In addition, Gina Matthias never once discussed Plaintiff's attendance/reliability issues during any of the monthly one-on-one meetings she had with Gina and the team leader, Andy Durkin, nor did she ever issue Plaintiff a verbal or written warning for attendance.

f. In August 2023, the company started its Work from Home Hybrid program which involved sharing a desk with a fellow employee while in the office, and alternating work-from-home days.

g. Due to the fact that her fellow employee's desk was congested and surrounded by other PSRs who spoke very loudly while on the phone with customers, factors that greatly affected her concentration, productivity and mental health, Plaintiff requested that she desk-share at her desk which was secluded, quiet and had a beautiful view of nature. That request for accommodation was denied by

     supervisors Wyatt Davis and Gina Matthias, and her previous desk remained unoccupied as Plaintiff struggled to work at the new shared desk.

h. On 08/05/2023, Plaintiff sent her manager, Gina, an email requesting that she allow her to work from home full-time because when her symptoms flare up, she has to use the bathroom immediately due to the intensity and frequency, and therefore, she would call off less frequently if she was working from home. Moreover, Plaintiff's anxiety was being exacerbated by having to go into an increasingly hostile and uncomfortable work environment at the office.

i. On 08/26/2023, Plaintiff had an abdominal CT Scan for the first time in her life, in order to diagnose the root cause of her congenital abdominal pain that had plagued her since she was 5-6 years old. It was then that she found out that she had an Intussusception of the small intestines.

j. Plaintiff immediately notified her supervisor Gina, herself a former nurse, who understood the seriousness of the condition, but she still did not advise Plaintiff of possible work accommodation for intermittent absences through ADA.

k. Plaintiff was then scheduled for an Endoscopy and a Colonoscopy in early 2024 and she continued to wait for her one-year anniversary in order to apply for intermittent absence accommodation under FMLA.

l. In early September, Plaintiff mentioned to her Gina that she was getting worried about her attendance/reliability but she told her that, "*We do things differently here*". As a result, Plaintiff relaxed and continued to intermittently call off or leave early as needed.

m. Also in September 2023, Plaintiff was placed on a final warning for the way she had handled a call with a customer. Whereas Plaintiff felt confident that she was providing the Member with "sanctuary" and being a "warrior" for her member (both are Company values), she was advised that she had risked the relationship the company had with its largest client, the State of Connecticut.

n. In the final warning meeting with POD manager Lauren Reese and assistant POD manager (APM) Gina Matthias, Plaintiff specifically asked if this final written warning would be affected by other disciplinary actions such as attendance or productivity, resulting in immediate dismissal, but they both shook their heads and said that this warning was strictly for the way Plaintiff handled the call.

o. Meanwhile, Gina Matthias did not respond to Plaintiff's 08/05/2023 work accommodation email request until mid-September when she told her, simply, "*Try ADA*". Plaintiff immediately sent an email to HR requesting full-time work from home accommodation.

p. However, she did not request intermittent absence accommodation because she did not know that the same Law could protect her for that, an accommodation Plaintiff had mentioned to her manager numerous times but she never once suggested it to her.

q. Plaintiff's doctor immediately submitted the ADA work accommodation paperwork that she was required by HR to complete, but some information was missing, therefore they contacted the doctor's office for the same.

r. In September 2023, a Quality Specialist listened to one of Plaintiff's calls with a Provider and gave her a 62% score which infuriated the Plaintiff because (i)

Plaintiff had handled the call very professionally and met at least 80% of the requirements (ii) Plaintiff did not want anything to affect her metrics so that she could post out to another position in which she was very interested, and that score of 62% had lowered her September average score to below the required 85%. Therefore, she sent her supervisor an email disputing the scoring and due to the aggravation the score caused her, she left early because she was completely unable to be of assistance to customers due to the petty scoring standards. Subsequently, Plaintiff notified her supervisor that she had started counseling sessions on 10/02/2023 with the Employee Assistance Program (EAP), to help her handle her irritability (a symptom of PMDD) better in the future.

s. It is noteworthy that Plaintiff is a 49-year-old, highly accomplished, educated and experienced professional with excellent customer service skills, and had frequently told her supervisor that she wanted to post out of the entry-level PSR role as soon as she could because she was most interested in issue resolution as an Issue Resolution Specialist or a salaried Client Issue Resolution Specialist.

t. On 10/20/2023, Plaintiff was extremely fatigued after a night of diarrhea, and there were over 200 calls on hold. So she sent Gina Matthias a message via Teams letting her know that she might not be able to last all day at work. Plaintiff had come to the conclusion that besides eating certain foods, the stress at the office (hostility from team leader Michelle Clements, excessive heat and lighting in the office, crowded and loud work spaces, petty Quality scoring on calls etc.), was causing increased flare ups.

u. Gina Matthias immediately scheduled an impromptu one-on-one meeting that was held two hours after Plaintiff's Teams message. In that meeting, a very hostile Gina did not discuss Plaintiff's excellent performance as indicated by her strong call metrics, but immediately told Plaintiff that (i) there would be no change to Plaintiff's September Quality score of 62% and (ii) she was placing her on a final written warning for attendance.

v. In utter shock, Plaintiff asked Gina how she could place her on a final warning without previous verbal or written warnings, to which Gina stated that it was because Plaintiff was already on a final written warning for the call she had taken in September. Plaintiff reminded Gina that she and Lauren Reese (POD manager), had both advised her that the final warning from the call would not be used against her in any future disciplinary action, but Gina stated that that wasn't the case.

w. Plaintiff continued to work and on the same day, her doctor faxed in corrected ADA work-from-home accommodation paperwork which was approved by Benefits Administrator, Lauren Hedrick and Plaintiff immediately started working from home.

x. On 10/24/2023, Plaintiff found out from Lauren Hedrick that she could also apply for ADA intermittent absence accommodation for which she immediately applied and forwarded the ADA paperwork to her doctor for completion in order to protect her employment

y. She also sent an email to HR requesting a copy of the Attendance Policy and complained about:

i. The fact that she had never been issued a verbal or written warning for attendance prior to the 10/20/2023 final warning, and when she had asked Gina about it in September, she had told her that they do things differently at Quantum Health.

ii. Gina had never suggested ADA workplace accommodation to Plaintiff for intermittent absences even though she had been honest with her about her condition and she was struggling with attendance while seeking treatment for her conditions and waiting for FMLA workplace accommodation.

iii. Moreover, on 10/26/2023, a fellow female Caucasian PSR told Plaintiff via Teams Messaging that Gina and Michelle Clements had advised her of ADA accommodation for her attendance issues in the first week of September when she was placed on a written warning, but Gina had never suggested it to Plaintiff despite notifying her of her need for the same as early as June 2023.

iv. Further, Plaintiff advised HR that in May 2023, a young Black woman, Joyce Mbugua, who is Plaintiff's friend, was terminated after 3 years of employment. When Plaintiff asked her why she was terminated, she told her that the POD managers refused to accommodate her at work.

v. Gina Matthias also fired a newly-hired young Black man, Jordan Kent, in September 2023 without any prior verbal/written warnings or some form of coaching,

  z. On 10/31/2023, HR Specialist Andrea Lincoln held a video conference meeting with Plaintiff to address her email to HR but she terminated Plaintiff's employment stating that it was Plaintiff's responsibility to know about her benefits, not Gina Matthias' responsibility and that she did not represent the company's values.[1] On 11/01/2023, Plaintiff filed a Charge of Discrimination with the EEOC and obtained her Right to Sue letter.

## II. Statement of Claim:

Plaintiff alleges that Defendant failed to accommodate her, subjected her to disparate terms and conditions of employment, and discharged her because of her disabilities, her race (Black) and her protected activities in violation of the Americans with Disabilities Act of 1990, as amended, and Title VII of the Civil Rights Act of 1964, as amended. In addition, Plaintiff alleges that her immediate supervisor, Gina Matthias, and HR retaliated against her by terminating her employment because she complained about favoritism, discrimination and hostility in the department.

## III. Demand for Relief:

To that end, Plaintiff demands Compensatory damages in the amount of $300,000 for the Defendants' violation of the Americans with Disabilities Act of 1990, and $300,000 for racial discrimination under 42 U.S.C. § 1981 (Section 1981), for the especially egregious, reckless, premeditated and blatant discrimination and retaliation against Plaintiff by Defendant.

Further, she demands punitive damages for the malicious and reckless indifference to federally protected rights of an aggrieved individual, and damages for the

---

[1] Plaintiff is convinced that she was terminated on the second day of Open Enrollment to prevent the company from accruing higher health insurance costs due to Plaintiff's conditions and upcoming scans.

extreme emotional distress, depression, anxiety, suicidal ideation, sleeplessness, loss of enjoyment of life, mental anguish, and reputational harm Defendant has inflicted on Plaintiff as a result of their illegal actions, totaling $300,000.

Plaintiff also demands her Back Pay/Lost Wage damages (wages, bonuses, healthcare costs) in the amount of $50,000 which she would have earned during the period of November 1, 2023 through her one-year anniversary on April 24, 2024 had she not been unlawfully terminated. Plaintiff also demands Front Pay damages in the amount of $100,000 for her lost future earnings had she not been discriminatorily terminated.

Finally, Plaintiff seeks an Injunctive Relief from the court ordering Quantum Health to stop engaging in unlawful employment practices and policies, revise its Attendance policy to include verbal and written warnings so as to notify employees accordingly when attendance/reliability issues becomes excessive, and train its POD managers on employment law.

Submitted on: November 6, 2023

By: /s/ *Jane W. Pearson*
Jane W. Pearson
1330 Starbright Crossing Drive
Columbus, OH 43240
(614)323-5545
Janewpearson8@gmail.com
Plaintiff *Pro Se*

## CERTIFICATE OF SERVICE

I hereby certify that on November 7, 2023, a copy of the foregoing was sent via US mail to:

Quantum Health
Attn: General Counsel
5240 Blazer Parkway
Dublin, OH 43017
Phone: (800) 257-2035
Email: legalteam@quantum-health.com

U.S. Equal Employment Opportunity Commission
Anthony J. Celebrezze Federal Building
1240 E. 9th Street
Suite 3001
Cleveland, OH 44199
Email: Dilip.gokhale@eeoc.gov

/s/ *Jane W. Pearson*

Jane W. Pearson

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To:<br>EEOC<br>FEPA | Agency(ies) Charge No(s):<br>532-2024-00411 |
|---|---|---|
| **Ohio Civil Rights Commission**<br>*State or local Agency, if any* | | and EEOC |

| 1 Name (indicate Mr., Ms., Mrs., Miss, Mx., Dr., Hon., Rev.)<br>Ms. JANE PEARSON | Home Phone<br>(614) 323-5545 | Year of Birth<br>1974 |
|---|---|---|
| Street Address<br>1330 STARBRIGHT CROSSING DR<br>COLUMBUS, OH 43240 | | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name<br>QUANTUM HEALTH | No. Employees, Members<br>15 - 100 Employees | Phone No.<br>(616) 931-3029 |
|---|---|---|
| Street Address<br>5240 BLAZER PARKWAY<br>DUBLIN, OH 43017 | | |
| Name | No. Employees, Members | Phone No. |
| Street Address | City, State and ZIP Code | |

| DISCRIMINATION BASED ON<br><br>Disability, Race, Retaliation | DATE(S) DISCRIMINATION TOOK PLACE<br>Earliest: 04/24/2023     Latest: 10/31/2023 |
|---|---|

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I.     I was hired by Respondent on April 24, 2023. While in training, I told my manager, Gina Matthias, that I have disabilities that cause me to intermittently miss work when my symptoms flare up. I mentioned to her that I was always on intermittent leave when I was employed by other employers, but I was not eligible to apply for FMLA until after a year of employment with Respondent. However, Gina did not advise me to apply for ADA work accommodation, which was an option, but she advised a Caucasian employee to do so and they had fired a Black woman in May 2023 for attendance even though she had requested workplace accommodation. During my June 2023 through September 2023 monthly one-on-one meetings with Gina, she never once mentioned my attendance/reliability issues. In early August 2023, I sent Gina an email requesting that she allow me to work from home full-time because when my symptoms flare up, as I must use the bathroom immediately; and therefore, I would call off less frequently if I was working from home. After my September 2023 one-on-one, I mentioned to Gina that I was getting worried about my attendance/reliability, but she told me, "We do things differently here," so I relaxed and continued to intermittently call off or leave early, as needed. In the same month, I had discovered that I have a more serious medical condition, which would require medical treatment. I immediately notified Gina, but once again she did not recommend that I apply for ADA accommodation for intermittent absences. I continued to wait for April 2024,

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br>**Digitally Signed By: Ms. JANE PEARSON**<br>11/02/2023<br><br>*Charging Party Signature* | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(*month, day, year*) |

Page 1 of 3

EEOC Form 5 (11/09)

|  | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| **CHARGE OF DISCRIMINATION**<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | EEOC<br>FEPA | **532-2024-00411** |

**Ohio Civil Rights Commission** and EEOC
*State or local Agency, if any*

when I could apply for FMLA. Gina did not respond to my August 5, 2023, email requesting accommodation to work from home full time until mid-September when she responded and told me, "try ADA". I did not know that I could be accommodated under ADA until Gina sent me that email. I immediately contacted Human Resources and requested an ADA accommodation of full-time work from home. I did not request intermittent absences because I did not know that ADA could also protect me for intermittent absences. I had mentioned to Gina numerous times that intermittent leave would accommodate my disabilities, but she had never once suggested it to me.

II. On October 20, 2023, I was extremely fatigued as a result of my disabilities, so I sent Gina a message via Teams letting her know that I might not be able to last all day at work. She immediately scheduled an impromptu one-on-one within two hours. During that meeting, she sternly told me that she was placing me on final warning for attendance, even though I had never received a verbal or written warnings up until that day. On the same day, Human Resources approved my ADA request to work from home full time. I also immediately applied for intermittent absences disabilities as an ADA accommodation, and my doctor faxed my medical forms supporting intermittent absence accommodation to Human Resources on October 27, 2023. I also immediately sent Human Resources an email on October 20, 2023, complaining about (a) the fact that I was never ever warned about attendance prior to October 20, 2023 and when I asked Gina about it, she told me that they do things differently at Quantum Health, (b) Gina had never suggested ADA workplace accommodation to me for intermittent absences even though I had been honest with her about my disabilities and I was struggling with attendance, (c) a fellow female Caucasian employee told me on October 27, 2023 that Gina had suggested to her to apply for ADA accommodation in early September 2023 because of her own attendance issues and that she was on a written warning for the same, but Gina had still not responded to my workplace accommodation email from August 5, 2023, and (d) I remembered that a Black female employee was fired in May 2023 and she told me that management refused to accommodate her when I asked her why she was fired after 3 years with the company. I also requested that Human Resources rescind my attendance final warning for the same reasons. Respondents Human Resources Specialist Andrea Lincoln arranged for a meeting with me to discuss my email, which was held on October 31, 2023. During that meeting, Andrea discharged me. The reason Andrea gave me for my termination was that it was my responsibility to know my benefits and apply for them, and that I do not represent the company values.

III. I allege that Respondent failed to accommodate me, subjected me to disparate terms and conditions of employment, and discharged me because of my disabilities, my race (Black), and my protected activities in violation of the Americans with Disabilities Act of 1990, as amended, and Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br>**Digitally Signed By: Ms. JANE PEARSON**<br>11/02/2023<br><br>*Charging Party Signature* | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(*month, day, year*) |

EEOC Form 161-B (01/2022)

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | **Ms. Jane Pearson**<br>**1330 Starbright Crossing Drive**<br>**Columbus, OH 43240** | From: | **Cleveland Field Office**<br>**U.S. Equal Employment Opportunity Commission**<br>**Anthony J. Celebrezze Federal Building**<br>**1240 E. 9th Street, Suite 3001**<br>**Cleveland, OH 44199** |
|---|---|---|---|

| EEOC Charge No.<br>**532-2024-00411** | EEOC Representative<br>**Legal Unit** | Telephone No.<br>**(267) 589-9707** |
|---|---|---|

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

  Less than 180 days have elapsed since the filing date. I certify that the Commission's processing of this charge will not be completed within 180 days from the filing date.

  The EEOC is terminating its processing of this charge.

*Equal Pay Act (EPA):* You already have the right to sue under the EPA (filing an EEOC charge is not required.)  EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that *backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.*

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Digitally Signed By: Dilip Gokhale
11/02/2023

**Dilip Gokhale**
**Director**

Enclosures(s)

cc: **Miycol Jones, Senior HR Director**
    **Quantum Health**